# EXHIBIT H

IN THE MATTER OF THE ARBITRATION ACT 1996

AND

IN THE MATTER OF AN ARBITRATION

B E T W E E N : -

SK SHIPPING (SINGAPORE) PTE. LTD.

Claimants
(Owners)

-and –

CHINA NATIONAL CHARTERING CORPORATION

Respondents
(Charterers)

M.V. "TAI CHUNG"

Charterparty dated 26.01.06

FINAL ARBITRATION AWARD

**WHEREAS:**

1. By a time charterparty evidenced by a fixture recapitulation based on an amended New York Produce Exchange 1946 form, the claimants (hereinafter referred to as "the Owners") chartered to the respondents (hereinafter referred to as "the Charterers") the motor vessel "Tai Chung" (hereinafter

referred to as "the vessel") for a voyage on terms and conditions more particularly set out in the charterparty.

2. Clause 30 of the charterparty provided:

> This Charter Party shall be governed by English Law. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (L.M.A.A.) terms current at the time when the arbitration proceedings are commenced.
>
> It is hereby agreed that all claims below U.S. $50,000 excluding interest and costs shall be settled as per L.M.A.A. Small Claims Procedure current at the time when the arbitration proceedings are commenced.

3. A dispute arose between the parties as detailed hereafter. As the amount at issue was less than U.S. $50,000.00, The London Maritime Arbitrators Association (LMAA) Small Claims Procedure (2006) was to apply. On 27th October 2006, the Owners gave notice to the Charterers to join in the appointment of a sole arbitrator for the reference, but the Charterers did not respond. The LMAA Small Claims Procedure provides that if the parties have not agreed on a sole arbitrator within 14 days of one party giving notice to the other to join in appointing a sole arbitrator, either party may apply to the President of the LMAA to make the appointment on the parties' behalf. On 15th January 2007, there still having been no reply from the Charterers, the Owners did so apply and the President appointed me, the undersigned Bruce Buchan, of 44 Nadine Street, London SE7 7PG to act as sole arbitrator in this matter. The seat of the arbitration is London.

4. On 22nd January 2007 I advised the Charterers by facsimile and by electronic mail that they were required under the LMAA Small Claims Procedure to serve their Defence and any counterclaim in this matter, together with the documents upon which they relied, by close of business in London 15th February 2007. I added that there was liberty to apply for additional time in which to serve their submissions, which could be granted if they could show that an extension of time was genuinely and reasonably needed.

5.  The Charterers neither served their Defence by the required date nor did they request additional time in which to do so. On 20th February 2007, I therefore ordered, as provided by section 5 (d) of the LMAA Small Claims Procedure (2006), that they serve their Defence and any counterclaim in this matter by close of business in London 2nd March 2007, in default of which I would proceed to an award on the basis of the submissions and documents before me, to the exclusion of all others. The Charterers have not served the required submissions and I have therefore made my Final Award.

6.  The said dispute concerned the Owners' claim for U.S. $26,458.29 in charter hire. The Owners sought interest and costs.

7.  As provided by the LMAA Small Claims Procedure, there was no oral hearing. My reasons for the Award are attached hereto and form part of this Final Arbitration Award.

**NOW I**, the said Bruce Buchan, having taken upon myself the burden of this reference, having considered the written evidence and submissions put before me and given due weight thereto, DO HEREBY MAKE, ISSUE AND PUBLISH this my FINAL AWARD as follows:

A)  **I FIND AND HOLD** that the Owners' claim for U.S. $26,458.29 in charter hire succeeds in full.

B)  **I THEREFORE AWARD AND ADJUDGE** that the Charterers shall pay forthwith to the Owners the sum of U.S. $26,458.29 (twenty six thousand four hundred and fifty eight United States dollars and twenty nine cents) together with interest thereon at the rate of 7.5% (seven and one half percent) per annum compounded at three-monthly rests from 20th March 2006 until the date of payment.

C)  **I FURTHER AWARD AND ADJUDGE** that the Charterers shall bear their own and, up to a maximum of £2,000.00, the Owners' recoverable costs of this **FINAL ARBITRATION AWARD** on the standard basis (for the

assessment of which, if not agreed, I hereby reserve my jurisdiction) together with the costs of this my Final Award in the sum of £1,600.00 **PROVIDED ALWAYS** that if, in the first instance, the Owners shall have borne any part of the costs of this Final Award they shall be entitled to an immediate refund from the charterers of the sum so paid together with interest thereon at the rate of 7.25% (seven and one quarter percent) per annum compounded at three-monthly rests from the date of payment by the Owners until the date of such refund.

GIVEN under my hand this 9th day of March 2007.

_____          _____
Bruce Buchan                                      Witness

## M.V. "TAI CHUNG"

Charterparty dated 26.01.06

REASONS
for, and forming part of, the Final Award

1. In this arbitration, the Owners, SK Shipping (Singapore) Pte. Ltd., claimed from the Charterers, China National Chartering Corporation, U.S. $26,458.29 in charter hire. As noted in the Final Award, the Charterers did not participate in this arbitration, despite having been given every reasonable opportunity to do so. The Owners' submissions, however, were sufficient for me to reach a proper conclusion in this matter.

The charterparty

2. This was a time charter for one trip, with delivery Kaohsiung, via Ube and Dubai and redelivery on passing Muscat outbound. The charter was evidenced by a fixture recapitulation based on an amended New York Produce Exchange 1946 form. The fixture recapitulation provided, *inter alia*:

> Hire USD 12500 DILOT*
>
> *[daily including overtime]

The charterparty provided, *inter alia*:

> Clause 4.
> ...the Charterers shall pay for the use and hire of the said Vessel as per clause 75 commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of a day; hire to continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners ...(if Persian Gulf then redelivery to be Passing Muscat Outbound)...

> Clause 15
> ...in the event of loss of time from...any other cause whatsoever preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost....

      Clause 75
      ...Hire:   Hire payable in advance at the rate of U.S. [$12,500.00] daily including overtime...

The events leading to this arbitration

3. The vessel delivered at 0735 hours universal time (UTC) 28th January 2006 and performed the intended voyage, sailing from Dubai at 2248 hours local time 5th March 2006, having discharged her cargo of cement. Enroute from Dubai to the redelivery point, passing Muscat outbound, the main engine was stopped and the vessel drifted while the holds were cleaned. The vessel therefore passed Muscat later than she would have, had the cleaning not taken place. In drawing up their final hire statement, however, the Owners based the redelivery time and the amount of fuel on board on redelivery on the time that the vessel would have redelivered, had the vessel proceeded directly to Muscat without cleaning, and the corresponding amount of fuel.

4. Rather than settle the final account on the basis of the notional redelivery time set out in the Owners' hire statement, the Charterers paid hire only up to the time that the vessel had sailed from Dubai. They also based the amount of redelivery fuel, the cost of which they deducted from the charter hire, on the quantity on board at that point. They thus did not give the Owners credit for the cost of the fuel, at the charterparty prices, that would have been consumed between Dubai and the redelivery point. The Owners calculated in their final hire statement that they were due U.S. $26,458.29 from the Charterers, but despite the Owners' approaches to the Charterers on the matter, the Charterers did not respond and amount remained unpaid. When approaches from the Owners' legal representatives also drew no response, the Owners proceeded to arbitration.

The Owners' case

5. As the Charterers declined to participate in this reference, I had to be certain that the Owners had established their case; I was able to do so. The owners included with their submissions copies of the vessel's logs relating to the period between her leaving Dubai and actually passing Muscat. A study of these and other documents made it clear that the Owners' computation of the notional redelivery time on which they based their final hire statement was accurate and fair to the Charterers. I found that the amount claimed, U.S. $26,458.29, was due and owing to the Owners.

6. I therefore awarded the Owners the total amount claimed. In accordance with the rule that costs follow the event, it followed from my conclusion that the Owners were entitled to their recoverable legal costs of the arbitration, up to the limit which I was able to award under the LMAA Small Claims Procedure and to the costs of the Award itself. They were also entitled to compound interest on the sum awarded at the appropriate commercial rate from the date by which final accounts should have been settled.

**IN THE MATTER OF
THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN
ARBITRATION**

B E T W E E N : -

SK SHIPPING (SINGAPORE) PTE. LTD.

<u>Claimants</u>
(Owners)

- and -

CHINA NATIONAL CHARTERING CORPORATION

<u>Respondents</u>
(Charterers)

**MV "TAI CHUNG"**

Charterparty dated 26.01.06

FINAL ARBITRATION AWARD